# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **HANNIBAL DWAN EASON,** **#M03226,** **Plaintiff,** v. **J. B. PRITZKER,** **ROB JEFFREYS,** **ALLEN PASLEY,** **JOHN DOE,** *IDOC's Administration Building,* **JANE DOE,** *IDOC's Administration Building*, **WEXFORD,** **MENARD CORRECTIONAL CENTER,** and **UNKNOWN PARTIES,** *Jane Does and John Does,* **Defendants.** | **Case No. 20-cv-01157-SPM** |

## MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

Plaintiff Hannibal Eason, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Menard Correctional Center ("Menard"), brings this civil rights action pursuant to 42 U.S.C. § 1983 and the Americans with Disabilities Act, 42 US.C. §§12101-213 ("ADA"). Eason claims that he is hearing disabled, and his communication needs are not being accommodated. He also alleges that due to his race and hearing disability he is targeted and discriminated against by staff.

The Complaint is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or requests money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At

this juncture, the factual allegations of the *pro se* Complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

### THE COMPLAINT

Eason alleges the following: He was transferred to Menard due to an error by IDOC Administration on October 17, 2018. (Doc. 1, pp. 40, 43). Prior to being transferred, he was designated as an inmate who suffers from a serious mental illness ("SMI"). (*Id.* at p. 31). In order to transfer him to Menard, the SMI designation was deleted from his record. (*Id.*). He has attempted to be transferred from Menard and placed in a prison where there "is more deaf awareness and deaf inmates[,]" but his requests for a transfer have been denied. (*Id.* at pp. 16, 43).

Eason is hearing disabled, and Menard does not accommodate his communication needs. He was not provided a sign language interpreter during the orientation process when he first arrived at Menard in 2018 and during disciplinary hearings. He continues to be denied the use of a sign language interpreter during medical appointments. (Doc. 1, p. 27, 33-35, 40, 44).

Menard also does not provide an adequate and accessible telephone system for hearing disabled inmates. Because Eason is the only inmate at Menard who needs a sign language interpreter or an ADA phone on a constant basis, he is the only hearing disabled inmate at Menard who knows how to use the ADA phone. (Doc. 1, pp. 13, 16). The ADA phone provided does not have a clear connection and frequently "drops" calls. (*Id.* at pp. 14, 16). Eason is forced to spend a majority of his allotted telephone time trying to retain clear reception. (*Id.* at p. 14). Defendants know that the reception for the ADA phone is poor but refuse to transfer Eason to a prison with a working ADA phone and other hearing disabled inmates. (*Id.* at p. 15). Menard provides text-based telecommunications ("TTY," "TDD") and video phone ("VP") equipment that can be used by inmates who are hearing impaired, but the use of these technologies only "garble" the phone call. (*Id.* at p.15). When Eason is allowed to use the ADA phone, proper procedures are not used by Menard staff. His hands remain cuffed and the quality and conditions of the calls made on the

ADA phone are not properly recorded by staff after each use. (*Id.* at pp. 19-24);

Eason is also not provided the same amount of phone time as other inmates. Inmates who are not hearing disabled are allowed fourteen or more telephone calls a week, and Ron Skidmore, the ADA coordinator at Menard, deliberately refuses to accommodate Eason so that he has the same type of access to phone use. (*Id.* at p. 11-12). Since May 2020, Eason has asked Skidmore twice for five ADA calls per week, but his requests have been ignored. (*Id.* at p.13). Because Menard does not provide an adequate ADA phone system seven days a week from 8 a.m. until 10 p.m. for inmates with hearing disabilities, Eason is prohibited from meaningful family contact and consistent access to attorneys. (*Id.* at p. 12-13).

Specifically, on October 14, 2020, Eason had to call the same person over and over and the connection would not go through or ring at all. (Doc. 1, p. 24). He also tried to call his brother and the interpreter connection was poor. (*Id.* at p. 24). On October 16, 2020, Eason made a call to an attorney and the entire call was choppy, garbled, and unclear. (*Id.* at p. 22). The connection was lost. (*Id.*). Eason redialed and tried to call another associate. On the second try, the phone connection was so poor the phone did not ring. (*Id.* at p. 23). Eason then adjusted the phone cord in an attempt to obtain reception and used the voice-carry-over ("VCO") option to place the call. During the call, Eason's hands were handcuffed and not free, which is required for VCO to work. The call did not work, and Eason ended the call. (*Id.*). Since then, the VCO feature has been disabled. (*Id.*).

On October 20, 2020, and October 26, 2020, Eason filed documents in the class action lawsuit, *Holmes v. Godinez,* Case No. 11-cv-02961 (N.D. Ill. 2015), alleging that the defendants in that case were not in compliance with the settlement agreement.[1] (Doc. 1, p. 10). As a result of

---

[1] Eason also filed a document claiming noncompliance with the *Holmes* settlement agreement in *In Re: Coronavirus Covid-19 Public Emergency*, Case No. 20-cv-01792 (N.D. Ill. 2020), "which is a docket created [by the Northern District] to receive emergency motions" by parties seeking relief from Amended General Order 20-0012 entered on March 16, 2020. (Doc. 1, p. 10) (*See also In Re: Coronavirus,* at Doc. 1, p. 3).

the court filings, Ron Skidmore met with Eason on October 27, 2020, to discuss ADA matters. At the meeting, Eason discussed with Skidmore the following: (1) an incident where Wexford workers refused him hearing aid batteries on October 26, 2020; (2) the ineffectiveness of the ADA phone; (3) that he was being refused a head scan that was requested by an audiologist; (4) that his earmolds have been ready since October 2019, and he has never received them; (5) his need for a communication porter for the library; (6) that there is no closed caption provided on Menard movie channels; and (7) the availability of closed caption services during phone use. (*Id.* at p. 10-11). Since the meeting, however, nothing has improved. As of November 1, 2020, the ADA phone was still inadequate. (*Id.* at p. 10). Eason claims he has discussed the issues with the phone on more than three occasions with Skidmore. (*Id.*).

Eason states that because his disability is not being accommodated, he is exploited by staff members and other inmates. (Doc. 1, p. 25). Eason is made fun of by the correctional officers assigned to his gallery, has been assaulted by Menard staff on more than one occasion since October 17, 2020, and mistreated by the orange crush team after knowing that he has difficulties hearing. (*Id.* at pp. 37, 39. 45). He is also excluded from services, programs, and activities. (*Id.* at pp. 13, 27). Because he is denied accommodation for his hearing disability and targeted by staff, Eason experiences severe isolation. (*Id.* at p. 12).

## DISCUSSION

The Court will first dismiss several claims brought by Eason. To survive preliminary review under Section 1915A, a Complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), which includes "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007). The plausible allegations must be made against individuals, and when a plaintiff does nothing but state that a group of individuals harmed him without providing more, all he has done is establish that there is a "sheer possibility" that someone in that group harmed him. *Ashcroft*

*v. Iqbal,* 556 U.S. 662, 678 (2009) (finding that a complaint must describe "more than a sheer possibility that a defendant has acted unlawfully"). Additionally, to state a viable Section 1983 claim, a plaintiff must allege that each defendant was personally involved in the deprivation of a constitutional right. *Matz v. Klotka*, 769 F.3d 517, 528 (7th Cir. 2014) ("[I]ndividual liability under § 1983 requires personal involvement in the alleged constitutional deprivation"); *see also Pepper v. Vill. of Oak Park*, 430 F.3d 806, 810 (7th Cir. 2005) ("[T]o be liable under § 1983, the individual defendant must have caused or participated in a constitutional deprivation.").

Here, Eason has failed to state a claim against Defendants pursuant to Section 1983 for constitutional violations. (*See* Doc. 1, p. 5-8, 17, 27, 38, 44). A majority of the allegations in the Complaint are asserted against the "Defendants" generally, which include J.B. Pritzker, Governor of Illinois, Rob Jeffreys, IDOC Director, Allen Palsey, IDOC Chief Legal Officer and ADA Coordinator, John and Jane Does— individuals who are a part of IDOC Administration, Wexford, Menard Correctional Center, and John and Jane Does. (Doc. 1, p. 1). These vague references to a group of defendants, without specific allegations tying individual defendants to the alleged unconstitutional conduct, do not raise a genuine issue of material fact with respect to those defendants and do not properly put Defendants on notice of the claims brough against them. Defendants Pritzker, Jeffreys, and Palsey are not even mentioned in the Complaint, and merely including the name of a potential defendant in the case caption is not sufficient to state a claim against that individual. *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998) ("A plaintiff cannot state a claim against a defendant by including the defendant's name in the caption."). A successful complaint generally alleges "the who, what, when, where, and how" and describes what each defendant did or failed to do to violate constitutional rights. *See DiLeo v. Ernst & Young,* 901 F. 2d 624, 627 (7th Cir. 1990).

Furthermore, Defendants cannot be held liable based solely on their positions as administrators or supervisors under Section 1983. *Chavez v. Ill. State Police,* 251 F. 3d 612, 651

(2001) ("The doctrine of *respondeat superior* can not be used to hold a supervisor liable for conduct of a subordinate that violates a plaintiff's constitutional rights."). And finally, Menard is also not a proper defendant under Section 1983 because, as a state entity, it is not a "person" amendable to suit under Section 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989). Therefore, the claims against Defendants Pritzker, Jeffreys, Pasley, John and Jane Does Administration, Wexford, Menard, and John and Jane Does for constitutional violations pursuant to Section 1983 are dismissed.

The Court further notes, that even if the constitutional claims survived preliminary review, Eason brings his claims against the listed Defendants in their official capacities only and seeks monetary damages, as well as injunctive relief. (Doc. 1, pp. 2, 7, 45). Because Section 1983 does not allow suits for damages against state officials in their official capacities, his claims for monetary damages due to constitutional violations would also be dismissed. *See Brown v. Budz,* 398 F. 3d 904 (7th Cir. 2005); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989).

Eason also makes several allegations against individuals who are not listed in the case caption as defendants, including correctional officers, Ron Skidmore the ADA coordinator, medical staff, and Anthony Wills. (*See* Doc. 1, pp. 9-11, 17, 19, 21, 33-37, 40-43). The Court will not treat parties not listed in the caption as defendants and listing a group of John Does in the case caption does not sufficiently identify any of these individuals as being defendants in the case. Therefore, any claims against individuals not listed in the case caption are dismissed without prejudice. *See Myles v. United States*, 416 F.3d 551, 551–52 (7th Cir. 2005) (to be properly considered a party a defendant must be "specif[ied] in the caption").

Throughout the Complaint, Eason repeatedly claims that Defendants are not in compliance with the *Holmes* settlement agreement, in which he is a class member. (Doc. 1, pp. 4, 5, 28, 40). *Holmes v. Godinez,* Case No. 11-cv-02961 (N.D. Ill. 2015), is a class action lawsuit that was filed in the United States District Court for the Northern District of Illinois by a group of deaf and

hearing impaired inmates seeking declaratory and injunctive relief alleging that IDOC denied inmates hearing accommodations as to intercom systems, emergency alerts, job opportunities, and medical services. On July 26, 2018, a settlement agreement was reached between the parties. Eason asserts that the *Holmes* settlement agreement "enacted ADA laws" and "became a federal ADA mandate[.]" (*Id.* at pp. 3-14).

The settlement agreement in *Holmes,* however, "does not by itself create any constitutional or statutory right[.]" *Aaron M. ex rel, Glen M. v. Yomtoob,* No. 00 C 7732, 2001 WL 1465251, at *2 (N.D. Ill. Nov. 16, 2001) (citing *Kokkonen v. Guardian Life Ins. Co. of America,* 511 U.S. 376 (1994)). *See also Cherry v. Litscher,* No. 02-C-394-C, 2002 WL 32350010, at *9 (W.D. Wisc. Sept. 10, 2002) (citing *DeGigidio v. Pung*, 920 F.2d 525, 534 (8th Cir.1990); *Green v. McKaskle*, 788 F.2d 1116, 1123 (5th Cir.1986)). Rather, the settlement agreement is a contract, and this Court does not have the jurisdiction to enforce its provisions. *See Morisch v. U.S.,* 709 F. Supp. 2d 672, 675 (S.D. Ill. 2010) (noting "as a predicate to enforcing a settlement agreement. . . a district must either have retained jurisdiction to enforce the agreement or possess an independent basis for federal subject matter jurisdiction with respect to disputes regarding the agreement."). As the Court will not enforce the terms of the settlement agreement, the claims pertaining to violations of the settlement in *Holmes* are dismissed. Eason is encouraged to contact class counsel in the *Holmes* case with any concerns he may have.

While Eason's constitutional claims brought under Section 1983 and claims for violation of the *Holmes* settlement agreement are dismissed, the Court finds that Eason has stated a successful statutory claim under the ADA. Accordingly, the Court designates the following Count.

**Count 1:**  Americans with Disabilities Act ("ADA") and Rehabilitation Act ("RA")[2] claim against Defendants for failing to accommodate Eason's hearing loss.

---

[2] Eason does not mention the Rehabilitation Act, 29 U.S.C. § 794(a), in his Complaint, but the Seventh Circuit has cautioned that claims of discrimination on account of a disability, especially those from a *pro se* prisoner litigant, should be analyzed by the district court in light of both the ADA and RA, whether or not the plaintiff has assert a claim under the latter statute. *Norfleet v. Walker,* 684 F.3d 688, 690 (7th Cir. 2012).

The parties and the Court will use this designation in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under *Twombly*.**[3]

Eason alleges that he suffers from a disability, sever hearing loss, and that Menard does not accommodate that disability by failing to provide adequate communication devices and sign language interpreters and denying him participation in various programing and activities. These allegations are sufficient to articulate a colorable ADA and RA claim. Count 1 will therefore proceed against Rob Jeffreys, in his official capacity as the Director of IDOC, and be dismissed as to the other Defendants. *See* 42 U.S.C. § 12131(1)(b); 29 U.S.C. § 794(b); *Jaros v. Ill. Dep't of Corrs.,* 684 F. 3d 667, 670 n. 2 (7th Cir. 2012) (the proper defendant in a claim under the ADA or RA is the state agency).

## TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

On November 20, 2020, Eason filed a Motion for Temporary Restraining Order and Preliminary Injunction asking to be transferred from Menard to an ADA facility. (Doc. 8, p. 2). In order to obtain relief, whether through a temporary restraining order ("TRO") or a preliminary injunction, Eason must demonstrate that: (1) his underlying case has some likelihood of success on the merits; (2) no adequate remedy at law exists; and (3) he will suffer irreparable harm without the injunction. *Woods v. Buss*, 496 F.3d 620, 622 (7th Cir. 2007). A preliminary injunction is an "extraordinary and drastic remedy" for which there must be a "clear showing" that the plaintiff is entitled to relief. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quoting 11A Charles Alan Wright, Arthur R Miller, & Mary Kay Kane, FEDERAL PRACTICE AND PROCEDURE § 2948 (5th ed. 1995)). The main purpose of a preliminary injunction is "to preserve the relative positions of the

---

[3] *See Twombly*, 550 U.S. at 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

parties until a trial on the merits can be held." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). Accordingly, the preliminary injunctive relief sought must relate to the claims pending in the underlying lawsuit. *See Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994) (per curiam) (holding that "a party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint").

The Court finds that Eason has failed to make a clear showing that an emergency injunctive relief is warranted. First, it is not clear that the relief sought in the Motion is related to the surviving claims in the Complaint under the ADA and RA for failing to provide sign language interpreters and an adequate phone system and excluding Eason from certain programing and activities offered at Menard. In the Motion, Eason claims that he is in need of emergency injunctive relief because Menard is not in compliance with the *Holmes* settlement agreement and will not make changes to safety and security to accommodate him. (Doc. 8, p. 1). As previously discussed, to the extent Eason is seeking an injunction for the enforcement of the settlement agreement in *Holmes,* he must bring such claims in the Northern District of Illinois, where the case was litigated. Additionally, his constitutional claims under the Eighth Amendment regarding unconstitutional treatment by staff have been dismissed because they were not properly asserted against a named defendant. It is also not exactly clear from whom Eason is seeking relief, because he has added individuals to the case caption in the Motion ─ White, Stephens, Mitchell, Wills, and Skidmore ─ who are not listed as Defendants in the case caption of the Complaint. A motion for injunctive relief is not a proper vehicle for modifying claims or adding defendants.

Second, presuming that the request for emergency injunctive relief is related to the surviving ADA and RA claims, the Court finds that Eason has not provided the Court with sufficient information on how he may suffer irreparable harm with no adequate remedy at law. The "possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm[,]"

*D.U. v. Rhoades,* 825 F. 3d 331, 339 (7th Cir. 2016)(quoting *Sampson v. Murray*, 415 U.S. 61, 90 (1974)), and the statements made in the Motion do not refute this possibility. Eason statements that he will incur loss of "his sanity or continuations of irreparable harms" and be subjected to "trouble" are too general and vague to demonstrate a likelihood of irreparable harm warranting injunctive relief. *See Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 22 (2008) ("[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with [the Supreme Court's] characterization of injunctive relief as an extraordinary remedy...."). Accordingly, the Motion for a TRO and Preliminary Injunction (Doc. 8) is denied.

Eason also requests a preliminary injunction in the Complaint. (Doc. 1, p. 26). The request is one sentence asking to be removed from Menard to a prison "where an adequate telephone is equally accessible" to Eason. Because the request does not comply with Federal Rules of Civil Procedure 7 and 65 requiring a request for a court order to be made by motion and does not address any of the conditions necessary for obtaining a preliminary injunction, the request for a preliminary injunction contained in the Complaint is also denied.

### RECRUITMENT OF COUNSEL

Eason has filed a Motion for Recruitment of Counsel (Doc. 3), which is **DENIED**. [4] Eason states that, in an attempt to recruit counsel on his own, he has sent out letters to many firms, and they cannot take his case. (*Id.* at p. 1). He includes the names of three firms he has contacted, as well as a sheet containing names and addresses of civil rights attorneys with markings by three additional firms. (*Id.* at pp. 1, 3). Accordingly, he appears to have made reasonable efforts to retain counsel on his own. With respect to his ability to pursue this action *pro se*, Eason indicates he is unable to represent himself because he is hearing disabled with speech impediments and uses sign language. Eason's hearing impairment, however, does not necessarily warrant recruitment of

---

[4] In evaluating the Motion for Recruitment of Counsel, the Court applies the factors discussed in *Pruitt v. Mote,* 503 F.3d 647, 654 (7th Cir. 2007) and related authority.

counsel at this time. He has some college education, and his Complaint demonstrates an ability to construct coherent sentences and communicate clearly with the Court. Currently, this straightforward case is proceeding on a single claim against one defendant and given the early stage of litigation, it is difficult to accurately evaluate the need for assistance of counsel. Should his situation change as the case proceeds, Eason may file another motion setting forth all the facts that support his request.

## DISPOSITION

For the reasons set forth above, the Complaint survives preliminary review pursuant to Section 1915A. **Count 1** will proceed against Rob Jeffreys in his official capacity. All other claims are **DISMISSED without prejudice**. Defendants Pritzker, Pasley, John and Jane Does IDOC Administration, Wexford, Menard Correctional Center, and Unknown Party John and Jane Does are **DISMISSED without prejudice**.

The Clerk of Court shall prepare for Jeffreys:  (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to Defendant's place of employment as identified by Plaintiff Eason. If Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require Defendant pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If Defendant cannot be found at the work address provided by Plaintiff Eason, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, his last known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

**Pursuant to Administrative Order No. 244, Defendant need only respond to the issues stated in this Merit Review Order.** Defendant is **ADVISED** that the Court does not accept piecemeal answers.

If judgment is rendered against Eason, and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, even though his application to proceed in forma pauperis was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Eason is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 7 days after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: November 30, 2020**

       *s/Stephen P. McGlynn*
**STEPHEN P. MCGLYNN**
**United States District Judge**

## NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at **least 60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days or more**. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Eason is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Eason need not submit any evidence to the Court at his time, unless otherwise directed by the Court.