IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

HANNIBAL DWAN EASON, #M03226,   )
   )
     Plaintiff,   )
   )
     v.   )      Case No. 20-cv-1157-RJD
   )
LATOYA HUGHES,   )
   )
     Defendant.   )
   )

**ORDER**

**DALY, Magistrate Judge:**

Plaintiff, currently incarcerated within the Illinois Department of Corrections ("IDOC"), filed this lawsuit *pro se* and *in forma pauperis* pursuant to 42 U.S.C. §1983 and the Americans with Disabilities Act, 42 U.S.C. §§12101-213 ("ADA").   Plaintiff is deaf (Doc. 104, p. 31) and in his Complaint, he alleged that his communication needs were not being accommodated at Menard Correctional Center ("Menard").   Doc. 1.   After filing the Complaint, Plaintiff transferred to Pinckneyville Correctional Center ("Pinckneyville") and then to Dixon Correctional Center ("Dixon").   Docs. 37 and 49.   This matter now comes before the Court on Plaintiff's "Motion for Declaratory Judgment" in which he contends that he is entitled to compensatory damages and injunctive relief as a matter of law.   Doc. 75, p. 3, 9.   The Court construes the motion as one for summary judgment.   Defendant did not respond, but filed a Motion for Summary Judgment (Docs. 95, 96), to which Plaintiff responded (Doc. 100).

**Background**

Plaintiff is a member of the *Holmes* class, a lawsuit filed by a group of inmates seeking declaratory and injunctive relief regarding accommodations within the IDOC for their hearing impairments.  *Holmes, et al., v. Godinez*, *et al*., Case No. 11-cv-2961, Doc. 1.   The parties reached a settlement in which IDOC agreed to a multitude of provisions regarding certain accommodations, e.g., American sign language interpreters, TTYs[1], videophones, hearing aids, and tactile notification systems for IDOC inmates.    *Id*. at Doc. 436-2, p. 23-24; Doc. 438, p. 6.   The settlement agreement was approved in July 2018, but litigation continues as to IDOC's ongoing duties regarding the class members' hearing accomodations as provided in the settlement agreement.  *See*, *e.g*., *id*. at Doc. 818.   Even though he is represented by class counsel, Plaintiff Eason has filed over ten *pro se* pleadings in the last year regarding IDOC's compliance (or lack thereof) with the settlement agreement.   *Id*. at Docs. 781-785, 791, 792, 808, 809, 822, 827, 828.

Plaintiff filed the instant suit in this Court in November 2020.    Doc. 1.   He alleged that the IDOC transferred him in error to Menard in October 2018.   *Id*., p. 2.   Prior to the transfer, Plaintiff was designated as having a "SMI" (serious mental illness), but IDOC allegedly removed his "SMI" designation so that he could be transferred to Menard.   *Id*.   Menard did not provide a sign language interpreter for Plaintiff's orientation, a disciplinary hearing, or medical appointments.   *Id*.

Plaintiff further alleged that he was the only inmate at Menard who knew how to use the "ADA" phone.   *Id*.   The ADA phone frequently dropped calls and did not have a clear

---

[1]  Text telephone devices (TTYs or TDDs) are used by people with hearing or speech disabilities to send and receive text messages over telephone networks."  https://www.fcc.gov/consumers/guides/use-tty-devices-digital-wireless-phones (last accessed Jul. 18, 2023).

connection.  *Id.*   Menard's "ADA coordinator" did not allow Plaintiff to access the ADA phone more than twice per week, while inmates were otherwise allowed to make 12-14 calls per week. *Id.*,  p. 13, 14.   The ADA coordinator met with Plaintiff in October 2020 to discuss issues with the ADA phone and Menard's failure to provide closed captioned movies.  *Id.*, p. 4.   Nothing improved after their meeting.  *Id.*   Plaintiff wanted to be transferred to a prison where he could access an adequate phone.  *Id.*, p. 26.   Following the Court's preliminary review conducted pursuant to 28 U.S.C. 1915A, Plaintiff proceeded on one claim against Rob Jeffreys, in his official capacity as Director of the IDOC, for violating the Americans with Disabilities Act and Rehabilitation Act by failing to accommodate Plaintiff's hearing loss.[2]   Doc. 9.

## Plaintiff's Deposition Testimony

Plaintiff gave his deposition testimony via a sign language interpreter.   Doc. 104, p. 4. He testified that he transferred from Pontiac Correctional Center ("Pontiac") to Menard in the fall of 2018.   *Id.*, p. 5.   A staff member at Pontiac told him that he was being transferred to Menard because "[prison] administration didn't like [his] written grievances and the threats of lawsuits." *Id.*, p. 9-10.   When Plaintiff arrived at Menard with 30-120 other inmates, there was no sign language interpreter at the transfer "information session" held in the healthcare unit.   *Id.*, p. 6. He believes that he was the only deaf inmate who arrived at Menard that day because none of the other arriving inmates used sign language.   *Id.*, p. 7.   When he arrived at Menard, he was told "that it was a mistake I was brought there, so they tried to transfer me out.   Their request to transfer me out of Menard was denied."   *Id.*, p. 8.

---

[2]  Latoya Hughes is the Acting Director of the Illinois Department of Corrections and pursuant to Federal Rule of Civil Procedure 25(d) is automatically substituted for Rob Jeffreys. The Clerk of Court is directed to update the docket accordingly.

At Menard, Plaintiff had access to a telephone "but it was very limited." *Id*., p. 12.   A hearing inmate "could have up to 20 calls a week, but for the deaf population, they have to be taken to a different building, so our calls are limited to two calls a week." *Id*., p. 13.   At the time, Plaintiff was the only deaf inmate at Menard. *Id*.   Plaintiff was supposed to have 90 minutes to use the phone, but because staff did not have time and/or did not want to escort him to the phone, he was not allowed "a full allotment of time." *Id*.   Menard had a "TTY" phone[3] that was difficult for Plaintiff to use if he wanted to place a phone call to someone who was using a "video phone." *Id*., p. 14-15.   Plaintiff had previously used a video phone at Pontiac. *Id*., p. 14. Plaintiff was at Menard for "more than a month" before he was allowed to use the video phone; he had access to the TTY phone during that time, but could not effectively communicate with it. *Id*., p. 16.   Conversations on Menard's TTY phone would be "choppy, like a garbled message." *Id*., p. 18.

Once Plaintiff started using the video phone, new issues arose. *Id*., p. 20.   Menard was using "Sorenson", a video phone communications company; at some point, Menard switched to a different company, "Purple." *Id*., p. 20.   Whoever was responsible for switching Menard from Sorenson to Purple did not follow the proper procedure for changing providers. *Id*., p. 21.   Purple "is a very small company" and "there [was] not [] enough interpreters to provide services for phone calls during that time as compared to Sorenson." *Id*., p. 22.   The Purple interpreters would disconnect the inmates' calls. *Id*.   Calls were also disconnected because of internet issues. *Id*. A certain correctional officer-Lieutenant Bump-worked in the same building as the TTY and video

---

[3]  "Text telephone devices (TTYs or TDDs) are used by people with hearing or speech disabilities to send and receive text messages over telephone networks."   https://www.fcc.gov/consumers/guides/use-tty-devices-digital-wireless-phones (last accessed Jul. 18, 2023).

phones, and he hid the Sorenson phone in a closet "once the Purple phones were established in the facility." *Id*., p. 25-26.   Plaintiff also testified that "when Ron Skidmore took over as ADA coordinator at Menard...it became an issue with Mr. Skidmore not being an actual officer to require other officers to follow his instructions and to provide the ADA accommodations...when I did request for more phone time, it didn't go anywhere, it died out because they said, oh, we don't have to listen to you." *Id*., p. 37-38.

When asked whether he had "any other assistive devices" at Menard, Plaintiff stated that he "was given headphones and vibrating watch." *Id*.   Prison staff provided replacement batteries to Plaintiff for his hearing aids. *Id*., p. 46-47.   Plaintiff also had a small sign on his cell door that identified him as deaf. *Id*., p. 31.   The television channels at Menard had closed captioning, but "it was not on every program that was broadcast on that television." *Id*., p. 33.   The inmates could use headphones for television programs, but the headphones that were available were very fragile and often broke. *Id*., p. 33.

Plaintiff had at least two meetings with prison administrators regarding issues with the phones, issues with headphones, transfer to a different facility, the ADA communication plan, and Plaintiff's requests for batteries and interpreters. *Id*., p. 29-30.   Prison officials warned Plaintiff "not to file grievances." *Id*., p. 30.   In one of the meetings, a representative from the Chicago Hearing Society was present. *Id*., p. 32.   Topics at this meeting included the phones, interpreters for "medical care, church, medical services, classes...any higher state interactions,"  and the fragility of the headphones. *Id*.   Plaintiff believes that his ADA communication plan was updated after this meeting. *Id*., p. 33.

An administrator told Plaintiff that he would have an "interpreter anytime [he] came to healthcare", but "sometimes they would provide interpreters and sometimes they would not....if

there was an interpreter provided then I would be rushed from one person to another while the interpreter was there."  *Id*., p. 34.   Plaintiff practiced Islam while he was at Menard and he requested an interpreter for the services.   No interpreter was ever provided, and he was "completely lost" during the services.  *Id*., p. 35-36.   Plaintiff requested an interpreter for a clemency hearing at Menard and was denied.  *Id*., p. 40-41.

Plaintiff wrote Defendant Jeffreys "many" letters regarding ADA accommodations within the IDOC.  *Id*., p. 39.   Plaintiff does not believe he ever received anything directly from Defendant Jeffreys in return, but he has received responses to grievances that contain Defendant Jeffreys' signature.  *Id*., p. 40.

## Res Judicata

As a preliminary matter,[4] Defendant contends that because Plaintiff was/is a member of the *Holmes* class, Plaintiff's claims in this suit are barred by the doctrine of res judicata, which "prevents the relitigation of claims already litigated as well as those that could have been litigated but were not."  *Palka v. City of Chicago*, 662 F.3d 428, 437 (7th Cir. 2010) (internal citations and quotations omitted).   Res judicata applies where there has been a final judgment on the merits; the doctrine bars subsequent case(s) with the same parties (or their privies) and the same causes of action.  *Cent. States, S.E. & S.W. Areas Pension Fund v. Hunt Truck Lines, Inc*., 296 F.3d 624,

---

[4] As another preliminary matter, Defendant contends that this Court no longer has subject matter jurisdiction over this case because Plaintiff no longer resides at Menard and therefore his request for injunctive relief is moot.   It is Defendant's "heavy burden" to establish that a claim for injunctive relief is moot.  *Pleasureland Museum, Inc. v. Beutter*, 288 F.3d 968, 999 (7th Cir. 2002).   While it is true that any request for injunctive relief regarding specific accommodations at Menard is moot because Plaintiff transferred from Menard, Defendant has not met her burden in establishing that Plaintiff's claim for injunctive relief in its entirety is moot.   Plaintiff's requested injunctive relief is broader than the accommodations (or lack thereof) at Menard.   He requested transfer to a facility with a "working ADA phone" and it is not clear whether he currently has access to a working ADA phone.   Regardless, even if Plaintiff's request for injunctive relief is moot, Plaintiff may still collect compensatory damages under the ADA and RA.  *Lacy v. Cook Cty*., 897 F.3d 847, 862 (7th Cir. 2018).

628 (7th Cir. 2002).   The *Holme*s Court entered a consent decree that outlined the terms of the settlement and IDOC's ongoing responsibilities to Plaintiff and the other class members.   *Holmes v. Godinez*, 991 F.3d 775, 780 (7th Cir. 2021).   In a class action case, a consent decree is considered a final judgment.   *Gates v. Towery*, 456 F. Supp. 2d 953, 965 (N.D. Ill. 2006) (internal citations and quotations omitted).

The parties in Holmes are identical to the parties in the instant case.   Mr. Eason was/is a named Plaintiff in the *Holmes* case, which was filed against S.A. Godinez, who was (at that time) the Director of the IDOC.   The instant suit is also against the Director of the IDOC, who is currently Latoya Hughes.

In comparing the consent decree entered in *Holmes* to Plaintiff's pleadings and testimony in this case, the two causes of action are also identical.   In his deposition and his Response to Defendant's Motion for Summary Judgment in this case, Plaintiff described issues involving the TTY and video phones at Menard, a lack of sign language interpreters, headphones, his ADA communication plan, and closed-captioned television.[5]   The *Holmes* consent decree requires IDOC to provide all these accommodations (including an ADA communication plan) to current and future deaf or hearing-impaired inmates. *Holmes*, Doc. 446-2, pp. 7, 15, 18, 24 26, 28, 46.[6]

For example, the *Holmes* consent decree specifies that IDOC must "provide access to at least one videophone" at all facilities that house a deaf or hard of hearing inmate who communicates primarily through sign language.   *Id*., p. 24.   This requirement became effective

---

[5]  In his Response to Defendant's Motion for Summary Judgment, Plaintiff explains that he was denied a cochlear implant at Menard. Doc. 100, p. 11. Communication devices, including cochlear implants, are also addressed in the *Holme*s consent decree. *Holmes*, Case No. 11-cv-0261, Doc. 446-2, p. 46.

[6]  Plaintiff also wanted to be transferred to a facility with other deaf inmates.   The *Holmes* consent decree requires IDOC to consider housing deaf or hard of hearing inmates with other deaf or hard of hearing inmates, when requested. Id., p. 28.

Page **7** of **12**

on January 26, 2019-approximately three months after Plaintiff arrived at Menard.   *Id*.   Plaintiff

testified in this case that he started using the videophone at Menard after he had been there for at

least a month, but the phone was mostly inaccessible.     In August 2019, Plaintiff's attorneys in

the *Holmes* case raised the issue of whether videophones were   "truly accessible" to the class

members.     *Holmes*, Doc. 501, p. 17.   In the instant case, Plaintiff's Complaint requests

injunctive relief in the form of access to a working phone.

The doctrine of res judicata prevents "duplicative lawsuits."   *Palka*. 662 F.3d at 437.

The record reflects that the instant case is a duplicate of *Holmes*: same parties, same issues.   As

Plaintiff pursues the instant case, he simultaneously petitions pro se the *Holmes* Court to enforce

the consent decree and order IDOC to provide him access to an ADA phone.   *Holmes*, Docs. 637,

638, 643, 660, 791, 808.   Class counsel also files petitions on his behalf. *Holmes*, Docs. 701, 799.

The *Holmes* Court continues to monitor IDOC's compliance with the consent decree. *See*, *e.g*.,

Holmes, Docs. 815, 824, and 829.

Having found that all requirements for the application of res judicata exist here, Plaintiff's

claim for injunctive relief in this case is therefore DISMISSED WITH PREJUDICE.   Plaintiff's

available remedy is to petition the *Holmes* Court to enforce the consent decree-as Plaintiff has

done numerous times.   *O'Sullivan v. City of Chicago*, 396 F.3d 843, 868 (7th Cir. 2005).

However, the *Holmes* class members did not seek monetary damages, and therefore Plaintiff may

pursue those damages in this Court.   *Martin v. Davies*, 917 F.2d 336, 339-40 (7th Cir. 1990).

Therefore, to the extent Plaintiff is seeking compensatory damages regarding the denial of

accommodations to him by the IDOC at Menard, the Court considers the parties' summary

judgment arguments on Plaintiff's substantive allegations.

**Summary Judgment Standard**

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322(1986); *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248). In considering a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

**Discussion**

Plaintiff's single claim against Defendant Latoya Hughes is for alleged violations of the ADA and RA. The ADA and RA both protect individuals with disabilities from discrimination; the two statutes are "materially identical." *A. H. by Holzmuller v. Illinois High School Ass'n*, 881 F.3d 587, 591 (7th Cir. 2018). To succeed on this claim, Plaintiff must establish the following: (1) "he is a 'qualified individual with a disability'"; (2) "that he was denied 'the benefits of the services, programs, or activities of a public entity' or otherwise subjected to discrimination by such an entity"; and (3) "that the denial or discrimination was 'by reason of' his disability." *Wagoner v. Lemon*, 778 F.3d 586, 592 (7th Cir. 2015) (internal citations and quotations omitted). To obtain

compensatory damages, Plaintiff must establish that IDOC knew "that a harm to [Plaintiff's] federally protected right [was] substantially likely" and failed to act upon that likelihood.  *Lacy*, 897 F.3d at 863.

Defendant does not dispute that Plaintiff is a qualified individual with a disability, but contends that Plaintiff was not denied IDOC's services, programs, or activities, i.e., that Plaintiff received reasonable accommodations for his hearing disability. [7]   Whether the IDOC's accommodations are reasonable depends on "overall institutional requirements," including "[s]ecurity concerns, safety concerns, and administrative exigencies."  *Love v. Westville Corr. Ctr.*, 103 F.3d 558, 561 (7th Cir. 1996).  This query is "highly fact-specific." *A. H. by Holzmueller*, 881 F.3d at 592 (internal citations and quotations omitted).

The record before the Court reflects that whether Plaintiff received reasonable accommodations for his hearing disability at Menard is a question for the jury.   At times, Plaintiff had a host of accommodations available to him: phones specifically designed for the hearing impaired, a sign language interpreter in the health care unit, closed captioning on the televisions, hearing aid batteries.   However, Plaintiff's testimony indicates that, at times, these accommodations were not available to him and there is no information that explains why, or how often, the accommodations were unavailable.

Defendant argues that Plaintiff's deposition testimony evinces nothing more than "general dissatisfaction with his housing, with a certain interpreter company, or preference of one interpreter company over another."   The Court disagrees.   Plaintiff testified that the TTY phone emitted "garbled messages."   When Menard started using the video phone serviced by Purple,

---

[7] Defendant also contends that she is entitled to qualified immunity, an argument not supported by law.   Qualified immunity does not apply to official capacity suits.  *Wagoner v. Lemmon*, 778 F.3d 586, 589-90 (7th Cir. 2015).

Plaintiff's calls were disconnected and/or he could not make calls because there were so few interpreters.   Drawing all reasonable inferences in favor of Plaintiff (as the Court must when ruling upon Defendant's motion for summary judgment), a factfinder could conclude that the garbled messages and lack of interpreters rendered the phones inoperable.   If Plaintiff could not use the phones, they could hardly be considered reasonable accommodations.   Moreover, Plaintiff testified that his requests for an interpreter at his clemency hearing and religious services were either denied or otherwise disregarded, and his requests for an interpreter at healthcare visits were sometimes denied or otherwise disregarded.   Defendant does not provide any basis for the Court to find that the failure to provide an interpreter was reasonable.

Nevertheless, because Plaintiff's claim for compensatory damages is the only claim now pending in this Court, Plaintiff must establish that IDOC made a "deliberate choice" to violate Plaintiff's ADA/RA rights.  *Lange v. City of Oconto*, 28 F. 4th 825, 840-41 (7th Cir. 2022) (internal quotations and citations omitted).   Plaintiff testified that he informed Rob Jeffreys and other IDOC staff of the problems with the availability and efficacy of accommodations for his hearing impairments at Menard.   However, it is not clear when Plaintiff alerted them, and what they were told, and whether they took any steps to rectify the situation(s).   Without that information, the Court cannot find (for purposes of ruling on the parties' summary judgment motions) that IDOC made (or did not make) a "deliberate choice" to violate Plaintiff's ADA/RA rights.  *See id*.   Accordingly, there is a genuine issue of material fact regarding whether Plaintiff is entitled to compensatory damages and Plaintiff's Motion for Summary Judgment (Doc. 75) and Defendant's Motion for Summary Judgment (Doc. 95) are DENIED.

**Conclusion**

Plaintiff's injunctive relief claims are DISMISSED WITH PREJUDICE pursuant to the doctrine of res judicata.   Defendant's Motion for Summary Judgment is otherwise DENIED and Plaintiff's Motion for Summary Judgment (Doc. 75) is DENIED.   This case will proceed to trial on Plaintiff's ADA/RA claim for compensatory damages.   By separate Order, the Court will recruit counsel for Plaintiff.

**IT IS SO ORDERED.**

**DATED:   August 1, 2023**

s/ *Reona J. Daly*

**Hon. Reona J. Daly**
**United States Magistrate Judge**